IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARK HOPSON,                    )
        Petitioner,           )
                      )   Civil No. 09-117
        v.                    )   Criminal No. 03-151
                      )
                      )   Civil No. 09-118
UNITED STATES OF AMERICA,       )   Criminal No. 05-42
        Respondent.           )

MEMORANDUM OPINION

CONTI, District Judge.

        Pending before the court is a motion to vacate or set aside judgment of conviction by a person in federal custody pursuant to 28 U.S.C. § 2255 ("motion to vacate") (Criminal No. 03-151, Docket No. 249; Criminal No. 05-42, Docket No. 73) filed by defendant Mark Hopson ("defendant" or "Hopson").  Upon reviewing defendant's motion and reply (Crim. No. 03-151, Docket No. 254; Crim. No. 05-42, Docket No. 78), and the government's opposition to defendant's motion to vacate pursuant to 28 U.S.C. § 2255 (Crim. No. 03-151, Docket No. 253; Crim. No. 05-42, Docket No. 77), the court will DENY petitioner's motion for the reasons set forth herein.

## I.  Background[1]

        On May 19, 2003, a federal grand jury returned an indictment charging petitioner with seven counts of criminal acts, based upon conduct occurring between 1998 and 2002.  (Docket No. 1.)  The charges stemmed from Hopson's dealing in crack cocaine during that period.  In count one, Hopson was charged with conspiracy to distribute and conspiracy to possess with

---

[1] Many of the facts contained in the Background section of this memorandum opinion are also set forth in the court's January 26, 2009 memorandum opinion (Docket No. 248).  Certain of those facts are repeated here for the sake of convenience.

intent to distribute 50 or more grams of crack cocaine from 1998 through 2002, in violation of 21 U.S.C. § 846.  In counts two through six, defendant was charged (along with his mother, co-defendant Sarah Hopson) with conducting transactions with the proceeds of the illegal drug trafficking.  Specifically, count two charged a violation of 18 U.S.C. § 1956(h) (money laundering conspiracy), involving a $16,000 down payment on a 2001 GMC Yukon Denali motor vehicle, a $12,000 child support payment to the Mercer County Court of Common Pleas, and various purchases of household goods in an amount in excess of $100,000.  Count three charged a violation of 18 U.S.C. § 1956(a)(1)(B)(i) and 18 U.S.C. § 2 regarding the payment of $12,000 in child support, and count four charged a violation of 18 U.S.C. § 1957(a) regarding that payment.  Count five charged a violation of 18 U.S.C. § 1956(a)(1)(B)(i) regarding the purchase of the GMC Yukon Denali motor vehicle.  Count six charged violations of both 18 U.S.C. § 1957(a) and 18 U.S.C. § 2 regarding the down payment of $16,000 toward the purchase of the vehicle.  In count seven, defendant was charged with a violation of 18 U.S.C. § 922(g)(1) for possessing a firearm while having previously been convicted of a crime punishable by imprisonment for a term exceeding one year.

A jury trial on those charges was set for April 2005.  Prior to the scheduled trial on October 5, 2004, the government filed a notice of information pursuant to 21 U.S.C. § 851 noting two prior drug felony offenses for which Hopson had been convicted.  (Docket No. 106.)  On February 7, 2005, the government filed a complaint against Hopson charging him with a violation of 18 U.S.C. § 1512(a)(2)(B)(i), for tampering with a witness for the upcoming trial by the use of physical force.  (Crim. No. 05-42, Docket No. 1.)  A grand jury indicted Hopson on this charge on March 1, 2005.  (Crim. No. 05-42, Docket No. 12.)  The government petitioned

for an arrest warrant for Hopson at Criminal No. 03-151, and it was issued.  Hopson's bond was subsequently revoked.  (Docket No. 112.)

On the eve of trial on April 8, 2005, the parties reached a plea agreement, and Hopson changed his plea from not guilty to guilty as to counts one and two of the indictment at Criminal No. 03-151.  (Docket Nos. 138 and 139.)  As part of the agreement, the government agreed to dismiss the other charges at Criminal No. 03-151 and filed an amended information charging Hopson with only one prior drug felony conviction, as opposed to two.  (Docket No. 137.)  The court ordered that a presentence investigation report be prepared.  (Crim. No. 03-151, Docket No. 140.)  The court issued its Tentative Findings and Rulings Concerning Disputed Facts or Factors on March 8, 2006, noting Hopson was a career offender by reason of his two prior felony convictions.  (Crim. No. 03-151, Docket No. 176.)

Defendant responded to a number of questions asked by the court during the April 8, 2005 hearing for defendant's change of plea at Criminal No. 03-151.  Defendant under oath stated that he was thirty-four years old, had graduated from high school and received his diploma and had no problems communicating in English, or with his counsel, Vandy Jamison, Jr. ("Jamison")  (Crim. No. 03-151, Docket No. 147 at 2-3.)  Defendant testified that he did not ingest any drugs, medication or alcohol in the twenty-four hours prior to his plea hearing.  (Id. at 3.)  Defendant confirmed at his plea hearing that he had not "recently been under the care of a physician or a psychiatrist."  (Id.)  Prior to his plea hearing, defendant had not recently been hospitalized or treated for narcotic addiction.  (Id.)  Defendant stated that he understood what was happening in the courtroom and the court found him competent to plead.  (Id. at 3-4.)

During the hearing defendant acknowledged that he was a drug dealer and a money launderer.  (Id. at 9-10.)  Defendant stated he discussed with his counsel his intention to plead

guilty to certain of the charges that he was facing and how the U.S. SENTENCING GUIDELINES MANUAL (the "Guidelines" or "Sentencing Guidelines") might apply in his case.  (Id.) Defendant acknowledged that if his counsel miscalculated or misunderstood defendant's potential Sentencing Guidelines range, that mistake "would not be grounds for [defendant] to be able to withdraw [his] plea; [defendant] would still be bound by [his] guilty plea and would have no right to withdraw it."  (Id. at 11.)  The court asked defendant if he understood "that if the sentence imposed is more severe than you expected, you will still be bound by your plea and will have no right to withdraw it?"  (Id.)  The defendant answered, "Yes."  (Id.)

The counsel for the government reviewed the terms of the plea agreement in front of the court and defendant.  (Id. at 17-23.)  Paragraph A-2 of the plea agreement provided that defendant will plead guilty to counts one and two of the indictment at Criminal No. 03-151, and that "he acknowledges his responsibility for the conduct charged in Counts 3, 4, 5, 6 and 7 of the indictment" at Criminal No. 03-151.  Counsel made clear on the record, however, that defendant reserved the right to challenge the calculation of the applicable advisory guideline range based upon conduct underlying the charges in counts three though seven:

> [MR. RIVETTI:] And I spoke about [paragraph A-2] with Mr. Jamison as we were getting ready for today's proceeding, and he wanted me to put on the record, to emphasize that it says that it may be considered by the Probation Office and the Court.  It does not require that the conduct at those counts be relevant conduct. It's just a possibility, and that will be a determination that's ruled upon at sentencing.
>
> MR. JAMISON: Your Honor, that comports with my understanding regarding my earlier conversation with Mr. Rivetti. The point to be made at that juncture is that we are not acknowledging possession of a weapon that's mentioned in Count No. 7 or any of the other relevant conduct.  Mr. Rivetti's recitation of our earlier understanding should control in terms of paragraph A-2.

THE COURT: So this may be considered by the probation officer; and whether it is or it isn't, if there's an issue about that, that will be brought to the Court's attention at the time of sentencing for a determination by the Court.

MR. JAMISON: That is correct, Your Honor.

MR. RIVETTI: Exactly, Your Honor.  For example, Count 7 is the felon in possession of a firearm charge.  The Defendant is not pleading guilty to that charge today.   During the factual recitation, the Government will put on the record that there was a firearm seized on August 30, 2002, during a search warrant; and I don't think they're disputing the fact that a firearm was seized. They're not agreeing he possessed it and is criminally culpable.

MR. JAMISON: That is correct, Your Honor.

THE COURT: Thank you.

(Id. at 18-20.)

The government noted that under the plea agreement, defendant waived his right to appeal his conviction and to attack collaterally his sentence, subject to limited exceptions; specifically the government stated that: "Mr. Hopson also waives the right to file a motion to vacate his sentence under 28 U.S.C. § 2255 attacking his conviction or sentence and the right to file any other kind of collateral attack on his conviction or sentence."  (Id. at 20-21.)  Defendant stated that he understood that the related case at Criminal No. 05-42, if it was consolidated for sentencing purposes under the Guidelines with Criminal No. 03-151, would not affect his guideline sentence:

[MR. RIVETTI]: But in any event, I have discussed with Mr. Jamison the possible effect that that other case could have on his sentence here before this Court.   And Mr. Jamison has indicated to me he would intend to continue the sentence on this matter until that related case is resolved as well.

Mr. Hopson is going to be held in custody, and that would be fine from the Government's -- for the sentencing to be continued so that they could be consolidated perhaps for sentencing.

5

But in any event, if that related case were to be consolidated with this case for sentencing purposes, under the guidelines, the offense level for the drug count that Mr. Hopson is pleading guilty today is more than nine levels higher than the offense level for the witness tampering count, and so the witness tampering count, were he to be convicted or plead, would not have an effect on the sentencing. That's if they were consolidated.

. . .

And so that's what we discussed.

MR. JAMISON: That comports with my understanding of the conversation, Your Honor.

. . .

MR. RIVETTI: Mr. Jamison will need to discuss with counsel on the other matter, but I do think it's still important for the Defendant to acknowledge the plea letter as explained, and this other discussion, that he understands those, and this is the complete agreement.

THE COURT: Okay.
Now, Mr. Jamison, do you agree that the terms of the plea agreement have been correctly stated?

MR. JAMISON: Yes.

THE COURT: Okay. Mr. Hopson, have you heard the terms of the plea agreement as reviewed to you by Mr. Rivetti?

THE DEFENDANT: Yes.

THE COURT: And you've heard the other discussion on the record in terms of the other criminal proceeding against you and how it may affect your sentencing in this case and the other matters that were discussed by Mr. Rivetti and Mr. Jamison.

THE DEFENDANT: Yes.

THE COURT: Do you understand the matters that they were discussing?

THE DEFENDANT: Yes.

THE COURT: And do you understand how the other matter might affect your sentence in this case or your sentence in this case might affect the other criminal case that is pending against you?

THE DEFENDANT: Yes.

(Id. at 24-27.)

The attorneys for the government, defendant, and defendant's counsel each initialed changes to the plea agreement relating to the maximum penalties. (Id. at 22-23.) Defendant and his counsel told the court at the hearing that the government correctly stated the terms of the agreement and the discussions and understandings between counsel. (Id. at 23, 26-27.) The last page of the plea agreement, above Hopson's signature, reads:

> I have received this letter from my attorney, Vandy Jamison, Jr., Esquire, have read it and discussed it with him, and I hereby accept it and acknowledge that it fully sets forth my agreement with the Office of the United States Attorney for the Western District of Pennsylvania. I affirm that there have been no additional promises or representations made to me by any agents or officials of the United States in connection with this matter.

(Crim. No. 03-151, Docket No. 138, Gov't Ex. 1 at 5.)

On June 13, 2006, Hopson, represented by Mr. R. Damien Schorr ("Schorr"), changed his plea at Criminal No. 05-42 from not guilty to guilty. Hopson did not enter a plea agreement with respect to Criminal No. 05-42. (Tr. of 6/13/2006 Hr'g at 18.) Defendant understood the maximum penalties for the offense at Criminal No. 05-42 and that his sentence might be more severe than he expected:

> THE COURT: Do you understand that if the sentence imposed is more severe, meaning more time is part of the sentence or the other conditions are more severe than you expected, you will still be bound by your guilty plea and will have no right to withdraw it?
> Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you understand that the maximum penalty to Count One is a term of not more than 20 years imprisonment, a term of supervised release of not more than three years and a fine of $250,000, those are the maximum penalties?

THE DEFENDANT: Yes.

THE COURT: Do you understand that if you were to violate the terms of the supervised release, the Court would revoke the supervised release, you would be incarcerated and no credit would be given for the time you had previously served on the supervised release.

Do you understand that?

THE DEFENDANT: Yes.

(Id. at 20-21.)

Defendant acknowledged that no one predicted or promised that he would receive a

certain sentence:

THE COURT: Mr. Hopson, has anyone made any prediction or promise to you as to what your actual sentence will be, other than what you've been told as a maximum sentence? I might also add that you've also been told that under the guidelines, the sentences will be -- this conviction will be subsumed into the other conviction.

Do you understand that?

MR. SCHORR: Before he answers, Your Honor, so it's clear, I have discussed with Mr. Hopson that under the guidelines, which he understands are advisory, not mandatory, he faces a 30 year to life sentence.

THE COURT: That's correct.

MR. SCHORR: But that that is not necessarily what you're going to give him.

I also explained to Mr. Hopson that there is a statutory minimum of 20 years which you cannot go below.

THE COURT: That's on the other crime.

MR. SCHORR: Right, but since these are all brought together, and that I would be begging you for 20 years, and that's the extent of any types of predictions I have made to Mr. Hopson.

THE COURT: Is the recitation or what your counsel said correct as to what he's told you?

THE DEFENDANT: Yes.

THE COURT: No one has made a prediction or promise to you as to what your actual sentence will be other than what you've been told as the maximum sentence with respect to this count, as well as the minimum sentence that's going to be applicable to your guilty plea under Criminal Action No. 03-151?

THE DEFENDANT: No.

THE COURT: No one has made you a promise other than what we've put on the record?

MR. SCHORR: No. And I have explained to Mr. Hopson on 05-42, the maximum statutory sentence is 20 years.

THE COURT: Right. But that gets subsumed into the other one.

Is there anything that I have said here today, other than what I have told you about the maximum sentence and how this guilty plea will affect your sentence at 03-151, meaning that this is subsumed within the guideline calculation under 03-151, other than that, is there anything I've told you today which suggests what your actual sentence will be? Is there anything I've said here today other than what I've told you about the maximum and minimum penalties and how the two sentences would run together?

THE DEFENDANT: I understand how it's going to work.

THE COURT: But there's nothing -- you don't have any -- from what I've told you, you don't know what your actual sentence will be, do you?

THE DEFENDANT: No.

(Id. at 23-26.)

All the charges to which Hopson pled guilty were consolidated for the purposes of sentencing, which occurred on June 13, 2006, immediately following the change of plea.  This court, after considering, among other things, the presentence investigation report and defendant's objections to the report, sentenced Hopson to a term of imprisonment of 360 months, to be followed by a ten-year term of supervised release, at count one of the indictment at Criminal No. 03-151, and to a concurrent term of imprisonment of 240 months at count two of that same indictment.  (Docket Nos. 182 and 183.)  At Criminal No. 05-42, Hopson was sentenced to a term of imprisonment of 240 months to run concurrently with the sentence imposed at Criminal No. 03-151.  (Crim. No. 05-42, Docket Nos. 56 and 57.)

Defendant filed notices of appeal on July 5, 2006.  (Crim. No. 03-151, Docket No. 188; Crim. No. 05-42, Docket No. 63.)  On October 9, 2007, the United States Court of Appeals for the Third Circuit affirmed the sentences imposed by this court.  (Crim. No. 03-151, Docket No. 238; Crim. No. 05-41, Docket No. 70.)

On June 24, 2009, the court issued a memorandum order (Crim. No. 03-151, Docket No. 248) with respect to defendant's motion for reduction of sentence pursuant to 18 U.S.C. § 3582(c)(2) (Crim. No. 03-151, Docket No. 241.)  The court denied defendant's motion because amendment 706 to the Sentencing Guidelines did not affect his guideline range of imprisonment and because the court found his contentions that his sentence exceeded the statutory maximum and that his sentence was "jurisdictionally defective" to be without merit.  (Crim. No. 03-151, Docket No. 248.)

On or about February 2, 2009, the clerk of court received and filed defendant's motion to vacate pursuant to 28 U.S.C. § 2255.  (Crim. No. 03-151, Docket No. 249; Crim. No. 05-42, Docket No. 73.)  In his motion, defendant raises two basic issues: (1) the Double Jeopardy

provision of the Sixth Amendment bars his enhanced sentence under U.S. SENTENCING

GUIDELINES MANUAL § 3C1.1 (2005),[2] and (2) he was denied a fair trial because of ineffective

assistance of counsel.


## II.  Standard of Review

A district court is required to hold an evidentiary hearing on a motion to vacate sentence

filed pursuant to 28 U.S.C. § 2255 unless the motions, files and records of the case show

conclusively that the movant is not entitled to relief.  28 U.S.C. § 2255 ("Unless the motion and

the files and records of the case conclusively show that the prisoner is entitled to no relief, the

court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact

and conclusions of law with respect thereto."); United States v. Booth, 432 F.3d 542, 545-46 (3d

Cir. 2005).

Under 28 U.S.C. § 2255, a federal prisoner in custody may move the court which

imposed the sentence to vacate, set aside or correct the sentence upon the ground that "the

sentence was imposed in violation of the Constitution or laws of the United States, or that the

court was without jurisdiction to impose such sentence, or that the sentence was in excess of the

maximum authorized by law, or is otherwise subject to collateral attack."

The statute sets a remedy for a sentence imposed in violation of law: "the court shall

vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a

new trial or correct the sentence as may appear appropriate."  28 U.S.C. § 2255.

---

[2] Section 3C1.1 of the U.S. SENTENCING GUIDELINES MANUAL was amended effective November 1, 2006, broadening the applicability of § 3C1.1.  See United States v. Yip, 592 F.3d 1035, 1042 n.4 (2010).  Defendant was sentenced prior to the effective date of this amendment, and the amendment was not applicable.  "Absent an ex post facto problem, the district court is *required* to apply the Guidelines provisions in effect at the time of sentencing." United States v. Larsen, 175 F. App'x 236, 243 (10th Cir. 2006).  The court notes that the amendment has no bearing on the issues presented in the pending § 2255 motion.

### III.  Discussion

#### A.   Need for a Hearing

Rule 4(b) of the Rules Governing § 2255 Proceedings provides that: "If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the [§ 2255] motion and direct the clerk to notify the moving party."  RULES GOVERNING § 2255 PROCEEDINGS 4(b).  The baseline the movant must meet to receive an evidentiary hearing is considered to be low.  Booth, 432 F.3d at 546 (internal citations omitted).  The Advisory Committee Notes as to Rule 4 further clarify that "[s]ince the motion is part of the criminal action in which was entered the judgment to which [the motion] is directed, the files, records, transcripts, and correspondence relating to that judgment are automatically available to the judge in his consideration of the motion."  RULES GOVERNING § 2255 PROCEEDINGS 4(b) advisory committee's notes.

The threshold is low, but defendant is not entitled to an evidentiary hearing in this case. For the reasons that follow, the evidence of record conclusively demonstrates that this court should not grant relief to defendant on his § 2255 motion.

#### B.  Waiver of Rights under Plea Agreement at Criminal No. 03-151

Criminal defendants may waive the right to file a motion to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255.  The waiver will only be enforced, however, if it is knowing and voluntary.  United States v. Mabry, 536 F.3d 231, 237 (3d Cir. 2008); United States v. Clive, No. 05-0383, 2008 WL 2889726, at **6-7 (W.D. Pa. Aug. 19, 2008).  If the waiver is enforceable, the court refrains from exercising subject-matter jurisdiction to consider the merits

of the motion, unless the result would work a miscarriage of justice.  Mabry, 536 F.3d at 237 n.4;

United States v. Khattak, 273 F.3d 557, 558, 563 (3d Cir. 2001).  A valid waiver bars

consideration of the merits of ineffective assistance of counsel claims raised in a § 2255 motion.

Mabry, 536 F.3d at 239-41.

      Federal Rule of Criminal Procedure 11(b)(1)(N) requires the court, not the government or

defense counsel, to address the defendant in a plea hearing and inform him that he is waiving the

right to appeal and collaterally attack his sentence with a § 2255 motion.  To that point it

provides:

> Before the court accepts a plea of guilty . . . the court must address
> the defendant personally in open court.  During this address, the
> court must inform the defendant of, and determine that the
> defendant understands, the following: . . . (N) the terms of any
> plea-agreement provision waiving the right to appeal or to
> collaterally attack the sentence.

A defendant claiming that a waiver should be unenforceable due to an inadequate plea hearing

colloquy has the burden of satisfying the plain error standard.  United States v. Goodson, 544

F.3d 529, 539 (3d Cir. 2008).  To satisfy this burden, the defendant must prove "(1) error, (2)

that is plain and obvious, and (3) that affects a defendant's substantial rights."  Id. (citing

Johnson v. United States, 520 U.S. 461, 467 (1997); United States v. Olano, 507 U.S. 725, 732

(1993)).  The defendant bears the burden of persuasion when seeking to demonstrate that plain

error precluded him from knowingly and understandingly entering into a plea agreement.

Goodson, 544 F.3d at 540 (citing Olano, 507 U.S. at 734).

      In Goodson, the government and defendant entered into a plea agreement, in which

defendant agreed, inter alia, (1) to plead guilty to one count of wire fraud, (2) waive his right to

indictment and plead guilty to two counts of an information charging him with making

counterfeit checks, and (3) waive his right to take an appeal from his conviction or sentence and

13

his right to attack collaterally his sentence.  On the final page of the plea agreement, defendant executed an acknowledgement denoting that he read the agreement, discussed it with counsel, and accepted its provisions.  Goodson's counsel witnessed his execution of the acknowledgement.  Id. at 531-32.  The following day the court held a change of plea hearing.  At that time, the court remarked on the existence of the plea agreement and asked the government to review its provisions.  The Assistant United States Attorney stated:

> There is a waiver provision in the plea agreement that deals with him waiving his right to take a direct appeal from his conviction. There are certain exceptions that are specified in the plea agreement which would permit him to take an appeal under those circumstances.  He also agrees to the waiver of his right to file a 28 U.S.C. § 2255 motion.

After the statement, the judge questioned the defendant about whether he had heard the government's recitation of the terms of the agreement.  The defendant responded that he had. The court then asked the defendant whether he understood the prosecutor's statement.  The defendant again responded in the affirmative.  Id. at 532.  Later in the hearing, the judge asked:

> Court: Do you understand that under certain circumstances, this relates to what you have given up in the plea agreement, you or the government may have the right to appeal to any sentence that I may impose?
>
> Defendant: Yes, your honor.
>
> Court: But do you also understand that you have given up substantial appellate rights in the plea agreement?
>
> Defendant: Yes, your honor.

Id.  The defendant pled guilty to the charges at the conclusion of the hearing.  Id.  The judge accepted Goodson's pleas as knowing and voluntary.  Id.  The court sentenced him to 27 months of imprisonment and the defendant timely appealed.  Id. at 532-33.  The government responded by arguing that the defendant had knowingly waived his right to appeal his sentence.  Id.

The Court of Appeals for the Third Circuit considered the entire record in <u>Goodson</u>, and held that by relying on the government to recite the terms of the plea agreement, including the appellate waiver, the district court committed obvious error in light of the requirements of Rule 11(b)(1)(N) that necessitate that the judge inform the defendant about those terms of the agreement relating to the waiver of the right to appeal and to attack collaterally the sentence.  <u>Id.</u> at 539.  The court of appeals also held that the district court plainly erred in failing to verify that the defendant understood the breadth of the waiver and the various exceptions set forth in the plea agreement.  <u>Id.</u>

Despite the obvious errors, the court of appeals held that the defendant failed to meet his burden in demonstrating the third element of the plain error rule: "that the deficient colloquy affected his substantial rights by precluding him from knowing of and understanding the significance of the binding appellate waiver in the plea agreement."  <u>Id.</u> at 540.  The court of appeals noted evidence that the defendant was college educated, he successfully perpetrated fraud, he could read and comprehend the plea letter and its terms, the district court discussed the possible punishment at the plea hearing, the government discussed the appellate waiver in general terms at the plea hearing, and he told the court that he understood his right to appeal was limited.  The court of appeals furthermore emphasized that the defendant signed the acknowledgement on the final page of the plea agreement.  The court of appeals concluded that in light of all the evidence, the defendant did not meet his burden of proving that the court's error affected his substantial rights.  <u>Id.</u> at 541.

In the present case at Criminal No. 03-151, the Rule 11 colloquy was not adequate for the same reasons as set forth in <u>Goodson</u>.  The district court here relied on the government to explain the terms of the plea agreement, including the provisions with respect to waiver of appellate

rights and the right to attack collaterally a sentence.  The district court did not personally address petitioner regarding these rights, did not specifically ask if he understood the waiver of these rights, and did not verify if, and to what extent, he understood the breadth of the waiver and the exceptions.  Under these circumstances, there exists plain and obvious error in light of the requirements of Rule 11(b)(1)(N).

This case mirrors Goodson, however, in that the evidence demonstrates that the inadequate colloquy did not affect defendant's substantial rights.  Although defendant was not college educated and during the plea hearing colloquy the court stated defendant "may" have the right to appeal, without making particular reference to his appellate waiver as the district court did in Goodson, the court concludes that defendant did not meet his burden of demonstrating that the deficient colloquy affected his substantial rights by precluding him from knowing of and understanding the waiver of his right to file a § 2255 motion at Criminal No. 03-151.

Here, defendant was thirty-four years old, had graduated from high school and received his diploma and had no problems communicating in English, or with his counsel, Jamison. (Crim. No. 03-151, Docket No. 147 at 2-3.)  Defendant had not ingested any medication or alcohol in the twenty-four hours prior to his plea hearing.  (Id. at 3.)  Defendant acknowledged at his plea hearing that he had not "recently been under the care of a physician or a psychiatrist." (Id.)  Prior to his plea hearing, he had not recently been hospitalized or treated for narcotic addiction.  (Id.)  Defendant stated that he understood what was happening in the courtroom and the court found him competent to plead.  (Id. at 3-4.)  Defendant had previous felony convictions for drug dealing and had acknowledged his involvement in drug trafficking and money laundering; his admissions show that he had the sophistication to run a drug trafficking organization and launder drug money.  (Id. at 9-10.)  Defendant discussed with Jamison his

intention to plead guilty to the charges that he was facing and how the Guidelines might apply in his case.  (Id.)  Defendant acknowledged that if his counsel miscalculated or misunderstood defendant's potential Sentencing Guidelines range, that mistake "would not be grounds for [defendant] to be able to withdraw [his] plea; [defendant] would still be bound by [his] guilty plea and would have no right to withdraw it."  (Id. at 11.)  The plea agreement included an acknowledgement indicating that Hopson read, discussed, and accepted its provisions.  (Crim. No. 03-151, Docket No. 138, Gov't Ex. 1 at 5.)

The government reviewed the terms of the plea agreement in front of the court and defendant.  (Crim. No. 03-151, Docket No. 147 at 17-23.)  The government specifically noted on the record that: "Mr. Hopson also waives the right to file a motion to vacate his sentence under 28 U.S.C. § 2255 attacking his conviction or sentence and the right to file any other kind of collateral attack on his conviction or sentence."  (Id. at 21.)  The government, Jamison, and defendant all initialed certain changes in the terms of the plea agreement related to the maximum penalties and signed the plea agreement. (Id. at 22-23.)   Both defendant and his counsel told the court at the hearing that the government correctly stated the terms of the agreement, and defendant told the court at the hearing that he understood matters discussed in court.  (Id. at 26-27.)  After considering the record as a whole, the court concludes that defendant failed to meet his burden of proving that the deficient Rule 11 colloquy precluded him from understanding he had the right to file a § 2255 motion and that he agreed to waive this right with respect to Criminal No. 03-151.

The court will enforce defendant's waiver of his right to file a § 2255 motion at Criminal No. 03-151.  Defendant did not enter into a plea agreement or waive his right to file a § 2255 motion with respect to his entry of a guilty plea at Criminal No. 05-42.  In determining that the

17

motions, files, and records of the case show conclusively that defendant is not entitled to relief, the court will address the merits of the issues raised in Hopson's § 2255 motion with respect to Criminal No. 05-42 and Criminal No. 03-151.

### C.  Double Jeopardy Claim

Defendant contends that the court violated the Sixth Amendment's prohibition against double jeopardy when it enhanced his sentence by two levels because he obstructed justice pursuant to U.S. SENTENCING GUIDELINES MANUAL § 3C1.1 (2005).  The Supreme Court and the United States Court of Appeals for the Third Circuit have considered and rejected similar arguments.  The Supreme Court stated "we have rejected double jeopardy challenges because the enhanced punishment for the later offense" does not enhance punishment for the original crime or punish twice for that crime, but is instead a "stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one."  Witte v. United States, 515 U.S. 389, 400 (1995).  The Court of Appeals for the Third Circuit addressed an argument similar to defendant's argument in United States v. Gibbs, 190 F.3d 188 (3d Cir. 1999); it held that "a court does not violate a defendant's protections against double jeopardy when it convicts a defendant for crime X, enhances his sentence for crime X because of conduct Y, and convicts him for conduct Y as well."  Id. at 215.

Defendant noted that his guilty plea and conviction for obstruction of justice enhanced his sentence under the indictment at Criminal No. 03-151.  (Crim. No. 03-151, Docket Nos. 249, 250, 254.)  His conduct for the offense charged in Criminal No. 05-42 (obstruction of justice), like conduct Y referred to in Gibbs, enhanced his sentence for the drug-related offense charged in Criminal No. 03-151, like conduct X referred to in Gibbs.  This case mirrors the situation

contemplated by the Court of Appeals for the Third Circuit in <u>Gibbs</u>. Defendant's argument with respect to double jeopardy fails.

### D.  Ineffective Assistance of Counsel Claims

Defendant argues that his counsel was deficient because his counsel did not: (i) argue that the court imposed his sentence in violation of the Sixth Amendment's prohibition against double jeopardy; (ii) gather or introduce the testimony of Maurice Campbell; (iii) cite case law in support of his argument for a downward departure from the suggested term of imprisonment provided by the U.S. SENTENCING GUIDELINES MANUAL § 4B1.1 (2005); and (iv) research adequately defendant's past criminal record and its bearing on his enhanced sentence.

#### 1.  Legal Framework

A petitioner alleging ineffective assistance of counsel in violation of the Sixth Amendment must show: (a) deficient representation, meaning that counsel's representation fell below an objective standard of reasonableness; and (b) prejudice, meaning that, if not for counsel's unprofessional errors, there exists a reasonable probability – sufficient to undermine confidence in the current outcome – that the result would have been different.  <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88, 694 (1984).

##### a.  Deficient Representation

The relevant inquiry concerning allegations of deficient representation by counsel is whether counsel rendered reasonable assistance considering the totality of the circumstances. <u>Strickland</u>, 466 U.S. at 688.  Defense counsel has a wide range of latitude in planning and implementing strategy.  <u>See id.</u> at 688-89 ("Any [particular] set of rules [regarding counsel's

actions] would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions").

"When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. In considering whether defense counsel falls below this standard:

> [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'

Id. at 689. The Supreme Court has held that "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel's was unreasonable." Id. "The Supreme Court directs that our 'scrutiny of counsel's performance must be highly deferential' to avoid holding counsel incompetent because of reasonable strategic or tactical judgments which, with the benefit of tactical hindsight, might prove not to have best served his client's interests." United States v. Loughery, 908 F.2d 1014, 1018 (D.C. Cir. 1990) (quoting Strickland, 466 U.S. at 689).

### b.  Prejudice

With regard to the prejudice prong, merely showing that counsel's unprofessional errors had "some conceivable effect on the outcome of the proceeding" does not establish prejudice. Strickland, 466 U.S. at 693. Generally, a defendant must affirmatively prove prejudice. Id. To establish prejudice, Hopson must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at

694.  "A reasonable probability is a probability sufficient to undermine confidence in the

outcome."  Id.

The Court of Appeals for the Third Circuit has recognized that the prejudice prong of the

Strickland two-part analysis should be addressed first.  See McAleese v. Mazurkiewicz, 1 F.3d

159, 170 (3d Cir.), cert. denied, 510 U.S. 1028 (1993) ("Indeed, this Court has read Strickland as

requiring the courts to decide first whether the assumed deficient conduct of counsel prejudiced

the defendant.") (internal quotations and citations omitted).  Strickland recognized that

> [A] court need not determine whether counsel's performance was
> deficient before examining the prejudice suffered by the defendant
> as a result of the alleged deficiencies.  The object of an
> ineffectiveness claim is not to grade counsel's performance.  If it is
> easier to dispose of an ineffectiveness claim on the ground of lack
> of sufficient prejudice, which we expect will often be so, that
> course should be followed.

Strickland, 466 U.S. at 697.

## 2.  Failure to Argue Double Jeopardy

### a.  Prejudice

The standard for prejudice is articulated above: a reasonable probability that but for

counsel's unprofessional errors, the outcome of the proceeding would have been different.

Strickland, 466 U.S. at 694.  As discussed above this court found defendant's double jeopardy

argument to be without merit.  Witte, 515 U.S. at 400; Gibbs at 190 F.3d at 188.  Under those

circumstances, counsel's failure to raise that argument would not have negatively affected

defendant's case.  Counsel did not prejudice defendant when he did not raise the double jeopardy

argument.

### b.  Deficient Representation

Defense counsel's failure to argue double jeopardy does not demonstrate that he provided services below an objective standard of reasonableness.  As noted above, defendant's double jeopardy claim is meritless.  Failure to argue a meritless claim cannot deprive a defendant of his Sixth Amendment right to effective counsel.  United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument.").  Defendant did not meet his burden with regard to the deficient representation requirement by alleging that his counsel should have presented a meritless argument with respect to double jeopardy.

### 3.   Failure to Gather or Introduce the Testimony of Maurice Campbell

Defendant alleges ineffectiveness of counsel because his counsel failed to interview defendant's witness, Maurice Campbell ("Campbell"), who, defendant contends, would have testified that the firearm attributed to defendant actually belonged to Campbell.  Campbell, defendant asserts, left the gun at defendant's house because he felt unsafe carrying it home after a night of drinking.

Even assuming that counsel's actions with regards to Campbell's testimony fell below an objective standard of reasonableness, Hopson cannot show prejudice because his advisory guideline range would not be affected by evidence regarding defendant's lack of ownership of the firearm at issue.  Under § 4B1.1(a) of the U.S. SENTENCING GUIDELINES MANUAL defendant is considered a career offender.  As a career offender, his criminal history category was VI.  U.S. SENTENCING GUIDELINES MANUAL § 4B1.1 (2005).  Assuming defendant could have prevailed on his argument that the firearm at issue belonged to Campbell, his total offense level would have been 38 rather than 40.  According to the Sentencing Table of the Sentencing Guidelines, an offense level of 38 combined with a criminal history category of VI equates to a guideline

range of imprisonment of 360 months to life.[3]  U.S. SENTENCING GUIDELINES MANUAL, ch. 5, pt.

A (2005).  At sentencing on June 13, 2006, defendant's recommended term of imprisonment

based upon his offense level of 40 was 360 months to life in prison.  Even assuming for the sake

of argument that defense counsel erred by not introducing the testimony of Campbell regarding

the firearm, counsel's error did not prejudice defendant since defendant's guideline range would

have been the same regardless whether counsel investigated or introduced Campbell's testimony.

Because Hopson cannot demonstrate prejudice, he cannot prevail in this claim of ineffective

assistance of counsel.

### 4.   Failure to Cite Case Law in Support of Argument to Depart from Sentencing Guidelines Range

#### a.   Prejudice

Defendant argues that he suffered from deficient counsel because his counsel did not cite

decisions to support his request that the court depart from the Sentencing Guidelines.  The

standard for prejudice was addressed above.  Strickland, 466 U.S. at 694.  "[A]ctual

ineffectiveness claims alleging a deficiency in attorney performance are subject to a general

requirement that the defendant affirmatively prove prejudice."  Id. at 693.  By itself, failure to

cite case law in support of an argument does not equate to prejudice.  Berry v. Hulihan, 2009 WL

233981, at *7 (S.D.N.Y. Jan. 28, 2009) (noting that "there is no basis to assert that" a counsel's

---

[3] As already explained, defendant waived his ability to file a § 2255 motion with respect to counts one and two of the indictment at Criminal No. 03-151.  The discussion of defendant's ineffective assistance of counsel claims, therefore, primarily concerns count one of the indictment at Criminal No. 05-42.  Although the court did not clarify this in its findings with respect to the applicable guideline range, the range applicable to count one at Criminal No. 05-42 was 240 months.  See U.S. SENTENCING GUIDELINES MANUAL § 5G1.1(a) (2005) ("Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence.").  In order to affect the guideline range applicable to this count, defendant's offense level would have to be lowered to 33.  See U.S. SENTENCING GUIDELINES MANUAL, ch. 5, pt. A (2005).  The court reemphasizes that defendant's offense level would have only been reduced to 38 if Campbell's testimony was introduced and credited and the court refrained from imposing the two-level enhancement.

failure "to cite authority to support her legal arguments . . . would have affected the outcome . . . in any way").

With respect to defendant's contention that defense counsel failed to proffer sufficient case law to argue for a downward departure from the Sentencing Guidelines, defendant did not show prejudice.  Defendant suggests that had his counsel put forward more case law, his sentence might have been reduced.  Defendant did not contend that there exists a "reasonable probability" that his sentence would have been different, but for counsel's failure to submit more case law, as he is required to allege per Strickland.  Defendant argues that his sentence under his plea agreement should have totaled "240 months."  (Docket No. 250.)  Defendant's plea agreement and the court's review of the maximum penalties during the change of plea hearing made clear that Hopson faced a sentence of incarceration of not less than 20 years and up to life imprisonment.  (Docket Nos. 138, 139, 140.)

Under these circumstances, there is no "reasonable probability" that defendant's sentence would have been altered had his counsel presented additional case law when asking for a downward departure from the Sentencing Guidelines from the court.  Defendant failed to show prejudice.

### b. Deficient Representation

With respect to the reasonableness of representation, defense counsel need not cite particular decisions in support of legal standards of which the court is well aware.  See Jimenez v. Sisto, No. 06-3549, 2009 WL 2086646, at *4 (N.D. Cal. July 13, 2009) (suggesting that citations to case law can be superfluous when court and counsel are aware of the court's discretion to lessen a defendant's sentence).  Defense counsel's actions did not fall below an objective standard of reasonableness.  Defense counsel suggested that the court impose a "20-

24

year sentence, in that range." (Crim. No. 03-151, Docket No. 213 at 35-41.) Defense counsel advocated for a lesser sentence and a departure from the career offender guidelines in writing and at the sentencing hearing. (Crim. No. 03-151, <u>see</u> Docket No. 181; <u>see</u> Docket No. 213 at 35-41.) Under these circumstances the court concludes counsel's representation did not fall below an objective standard of reasonableness merely for failing to point out specific case law.

### 5.  Failure to Research Adequately Defendant's Past Criminal Record

#### a.  Prejudice

Defendant alleges that defense counsel failed to investigate prudently his past criminal record and how that record would affect his potential sentence. (Crim. No. 03-151, Docket No. 254.) Defendant argues that defense counsel and this court erred in calculating defendant's guideline sentence. (Crim. No. 03-151, Docket No. 254.) Assuming that defense counsel did not fully investigate defendant's past criminal record, that failure to investigate defendant's past conduct did not prejudice defendant as he was convicted of two prior drug felonies. (Tentative Findings and Rulings Concerning Disputed Facts or Factors, Crim. No. 03-151, Docket No. 176 at ¶ 6) ("defendant was convicted of Unlawful Delivery of a Controlled Substance . . . Pennsylvania at Criminal No. 1038 on May 22, 1991 as well as Unlawful Possession with Intent to Manufacture or Deliver a Controlled Substance . . . Pennsylvania at Criminal No. 109 on June 16, 1992.") Defendant's two prior felony convictions caused him to be a career offender under the Sentencing Guidelines. Defendant's contentions that the court sentenced him in excess of his guideline sentence and "to a prison term significantly longer than the statutory maximum for the offense committed" are incorrect. (Crim. No. 03-151, Docket No. 254.)

#### b.  Deficient Representation

Defendant's criminal record was correctly recorded.  See United States v. Hopson, 250 F. App'x 502, 506-07 (3d Cir. 2007).   Under the Guidelines, defendant is classified as a career offender.  Id.  Defense counsel's investigation would not have changed defendant's prior record; consequently, his representation was neither deficient nor prejudicial.  Indeed, defendant and his counsel were aware of the prior convictions because the government filed an information pursuant to 21 U.S.C. § 851 noting two prior drug felony convictions, which was amended pursuant to the plea negotiations to note only one prior drug felony conviction.  The amendment was beneficial to defendant because it caused the statutory mandatory minimum sentence to be reduced from life imprisonment to twenty years imprisonment.  (Tr. of 6/13/2006 Hr'g at 36-37.)

### E.  Conclusion

Hopson waived his right to file a § 2255 motion with respect to Criminal No. 03-151 because his plea agreement was knowing, understanding, and voluntary.  The enforcement of the plea agreement with respect to Criminal No. 03-151 will not work a miscarriage of justice.  The motions, files and records of the case show conclusively that Hopson is not entitled to relief.  His § 2255 motion with respect to Criminal No. 05-42 will be denied.

Well-settled case law refutes defendant's claim that the court violated the Sixth Amendment's prohibition against double jeopardy when it enhanced his sentence by two levels because he obstructed justice pursuant to U.S. SENTENCING GUIDELINES MANUAL § 3C1.1 (2005).  All defendant's contentions regarding the ineffective assistance of his counsel fail. Hopson needed to show both prejudice and deficient representation of counsel with respect to each claim of ineffective assistance of counsel.  Defendant failed to prove prejudice for any such

claim.  For the reasons set forth in this memorandum opinion, the motion to vacate will be denied in its entirety with respect to Criminal No. 03-151 and Criminal No. 05-42.

## IV.  Certificate of Appealability

When a district court issues a final order denying a § 2255 petition, the court must also make a determination about whether a certificate of appealability ("COA") should issue or the clerk of the court of appeals shall remand the case to the district court for a prompt determination regarding whether a certificate should issue.  Based upon the motion and files and records of the case, and for the reasons set forth herein, the court finds that defendant has not exhibited a substantial denial of a constitutional right.  A COA will therefore not issue.

## V.  Order

AND NOW, this 1st day of April, 2010, upon consideration of defendant's motion to vacate, government's responses and defendant's reply, IT IS HEREBY ORDERED that defendant's motion to vacate or set aside judgment of conviction by a person in federal custody pursuant to 28 U.S.C. § 2255 (Crim. No. 03-151, Docket No. 249; Crim. No. 05-42, Docket No. 73), is DENIED.

IT IS FURTHER ORDERED that no certificate of appealability should issue.

By the Court:

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
United States District Judge

27

cc:     counsel of record

        Mark Hopson
        USM #07809-066
        FCI Otisville
        PO Box 1000
        Otisville, NY 10963